Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you very much. Please be seated and good morning to everyone. The first case for argument this morning is the Country Vintner of NC LLC v. E & J Gallo Winery Incorporated. Is it Mr. Sevilla? Ready for you, sir. May it please the Court, my name is Garrick Sevilla. I represent the appellant, E & J Gallo Winery. With me at counsel table is Mr. Jonathan Bumgarner and Mr. Keith Kapp. Mr. Bumgarner will argue in rebuttal. With the Court's permission, we've reserved five minutes for rebuttal. This is a case of statutory interpretation. Before it was amended in 2008, the federal cost statute allowed federal courts to tax its costs, fees for exemplification, and copies of papers necessarily obtained for use in the case. The statute was amended in 2008 to cover making copies and exemplification of any materials, which would include electronically stored information or ESI for short. The question in this appeal is whether the processing of ESI that was undertaken by Gallo constitutes making copies or exemplification within the meaning of the cost statute. Now, to put this question in context, I think it's helpful to place processing within the four general stages of the electronic discovery process. Processing comes between the collection stage and the review stage. It goes collection, processing, review, and production. Processing refers to converting ESI from its native format into a format that's appropriate for both review and production. Now, by native format, I mean the original format that's created by the computer system. Familiar examples would be Outlook emails, Word documents, Excel spreadsheets. It is our position that processing constitutes making copies or exemplification of the native ESI. Any limitation on that in your view? Any limitation on that copying as you would have us find it? Well, Judge Shedd, I'm asking you, are there any limitations on copying as you would have us define it? Well, in this case, the limitation would be— I didn't ask you that. I asked you, are there generally? So if anybody did anything they could call copying in any way at all in discovery, that would be picked up in your view? Well, it would have to be necessary for use in the case, Your Honor. That would be the limitation. But even if it weren't the most efficient system, that's the system that the producer used, whatever he used in his system, if it was necessary for discovery, for use in the case, that would be picked up if you could somehow say it's copying. I think so, Your Honor. If the district court determined that— How much money do you think that's going to make for a law firm? Well, in this case, it didn't make—I mean, the Williams Mullen eDiscovery Center— How much money did you ask for? We're asking for $1,858. That's some money. It is a lot, but taxable costs can be a lot. Fees for court reporters, transcript— Does it strike you a little bit ironic that going to electronic filing and record keeping, which is supposed to make the system more efficient and cost-effective, may end up doing just the opposite under your read of the statute? Well, Your Honor, electronic discovery presents its own unique challenges. It certainly does. One of which, Your Honor, is the fact that there's a lot of it, and it's not organized, and it's hard to get rid of, unlike paper. Doesn't that auger then for reading copies narrowly? Hadn't the Supreme Court told us to read that statute narrowly? They did, and Gallo is asking the court to do that here because processing— Oh, no, no. I don't think you— to give to the other side in discovery. Wouldn't that be the more narrow reading? Well, Your Honor, I would respectfully disagree that there's anything in the statute that would limit copy— You don't have to disagree. I said, wouldn't that be the more narrow reading to say that copies allowed to be covered as taxes cost? The more narrow reading is that the final copies you made at the end of that process own to some format to give to the other side. Isn't that the more narrow reading? You may not say that's the right reading. It is a narrow reading. I don't think it has any support in the text of the cost statute. In fact, a couple of district courts have considered this question and concluded that copying of documents that are collected for purposes of review and discovery are subject to tax because that is an essential step. Why do you mean it has no support in the statute? It certainly would be covered under the statute, wouldn't it? Those copies would be covered even under your reading. The kind of copies I'm talking about, the final copies. I don't know exactly the words you want to use, but once you take the information through your filing system, through your reduction electronically and all, to get to a final disk or whatever the format is that you would pass on, that kind of copies would certainly be picked up even in your reading, wouldn't it? I agree, Your Honor. So there's some support for reading copies that way in the statute, then? Well, not limited to that. Then that's another thing to say. You didn't say that. You said there's no support to read copies that way. There's support to read copies that way. You just don't think that you think there's support to read copies broader than that. Well, you're asking for even more because you're asking for reimbursement for things you never turned over, for all of the attendant costs, for items that were never transmitted ultimately to a country vendor. So how can a narrow or a fairly narrow cost statute support all of that work you did that wasn't relevant or certainly wasn't deemed relevant in terms of the need to turn it over pursuant to the discovery request? Well, Judge Kena, I think that goes to the issue of whether the processing that Gallo undertook, whether it was necessary for this case. And even though documents aren't ultimately turned over or all of them are turned over, it doesn't follow that the copying that was done was unnecessary. But what I'm worried about, too, is not just the attendant cost shifting that's going on in your model, but also are courts then supposed to be holding mini-trials as to what's necessary and what's not necessary? If you get into these huge amounts in terms of the costs to be awarded for making copies, then the courts are going to have to be pretty rigorous, aren't they, in terms of requiring evidence and making factual findings as to necessity? Aren't we creating a large problem here? I don't know if it would be a problem, Your Honor, but district courts already are doing this. Parties submit declarations and describe why the work was done. Right, but they aren't holding mini-trials as to the necessity of the breadth of discovery engaged in, are they? I don't know if they're having live. The necessity of the in-house activities that were undertaken in order to comply with the discovery request. And that's what I'm worried about, whether your position is going to be creating a need for those mini-trials. I mean, it seems as though district courts are able to decide these issues on the written papers that are filed, and I have not come across any information suggesting that there's been problems with that procedure. Now, whether a district court would want to have a live hearing to make determinations as to whether the processing was necessary,  wouldn't they at some point have to get into the efficiency and best use of the style of electronic filing or record keeping that somebody does? Wouldn't they have to on occasion? I mean, aren't there different ways for a company to file data? There are a number of different ways. And so the point is, what do we do when one has a very efficient system, and they could do, say, hypothetically what your client did, and a more efficient system the way they log data, enter data, or how they entered it, for $10,000. But another client did it, and it took them $150,000. Well, would you say both those are recoverable just because that's the system the client uses? Well, I think so. Well, that seems to me that sort of discovery cost driving litigation in a way that it really should not do in a way that it has not yet done. Well, I mean, how the data is stored can go to the burden. And retrieved. How it could be retrieved, yes. And, in fact, here there was an e-mail archive that had a massive amount of data. I know that, but my point is this. You're talking about cost attendance litigation. We were talking about that. But that's going to require district courts, maybe through magistrates, but certainly district courts, to get into a question at some point of the efficiency of the style system, what you did to retrieve. Did you retrieve too much so you could make your decision on what you have to submit? That seems to me that's something that's going to be difficult to be done all the time on paper. Yes, Your Honor. District courts do it already. If the electronic filing system that a party has makes the data expensive to access, then that's an issue that could be teed up in a motion for protective order. In fact, it was teed up for a motion for protective order here. The district court did not address that issue. It adopted Country Vintner's proposal for retrieving the electronic data. And everything that Gallo did here was necessary to retrieve, just to find the emails that Country Vintner had demanded. Do you reward a company then? Could it be that a company, by choice of its style to retrieve information for litigation, could in fact help themselves in litigation by putting up a barrier of cost for someone who wants to sue them? Why couldn't they do that? I'm not sure it's necessarily in the company's best interest to make its electronic data. I didn't ask if it was in their best interest. I said, couldn't they do that? They could cause that as a barrier to prevent litigation by saying, by the way, it's not any surprise to you that over the last decades, if not centuries, certainly decades, that discovery, the cost of discovery, has become a factor in litigation, and just flooding the other side with discovery boxes and boxes. You know those stories, don't you? I do, Your Honor. I'm saying, so clearly discovery can be used as a weapon in litigation. And it seems to me, I understand your theory and I understand your problem, too. I just don't know how we get there and open up that can of worms to the change here. Because isn't it obvious that the change here was to pick up something more than just paper copies, making paper copies? It's also making computer format copies. Those acts themselves, leaving aside all your claim about the research and the retrieval, isn't that the basic reason of this rule change? So that you can get computer-supplied information, not just paper copies. Well, yes, the statute was amended to address copying and reproduction of electronic materials. The question in this case is whether what Gallo did was qualified. I understand. The question is, and the question is, how far back in that process can you go to pick up copying? Well, that's the question. And our position is that the processing that was done here replicated essential features of the electronically stored information. Mr. Biller, can I ask you this, please? Obviously, Gallo's lawyers had to review whatever they were going to produce for privilege and so forth. Can you tell us, assume that in this case, immediately after that review had been completed, and before anything was produced to the plaintiff, what amount of these costs that you're seeking would have already been incurred? Well, the answer to your question, Your Honor, is all of them. So you had to expend, you had to make these expenditures necessarily just to review the documents before you could produce them? That's correct, Your Honor. Okay. And the reason for that is because it was contained in an e-mail archive, had a massive amount of data. Which is, as Judge Shedd suggested, is a decision that your client makes with or without contemplating future litigation, but that's a decision your client made. Your adversary has no control over that. Well, they have control over what they request. Well, but they don't have any control over how the records are maintained, created and maintained. Admittedly, Your Honor, they don't have control over that. But companies store their data in a variety of ways, some more accessible than others. In this particular case, given the type of data that Country Vintner was seeking, it was not conducive. It was not in a storage format that was conducive to getting it. And what had to be done here was a lot of it had to be collected, had to be processed. Tell me, factually, why is that so? Factually, why is it that the information they wanted could not be produced efficiently? I'm using that word. More cost effective than you did. Why is that factually true in this case? The e-mail archive had a limited ability to conduct the kind of searching that the parties in the district court… Limitation on search is what it was. Yes, Your Honor. And there was a massive amount of data. So Gallo collected about 288 gigabytes of e-mails from this archive. Has your client instituted a more efficient e-mail search system? Well, the limitations on searchability, I don't know if they've been addressed since this litigation, but that's what drove the processing in this case was that limitation. And the only way to get at the e-mails that Country Vintner was demanding was to undertake this processing. And just to return, though, to the key point, the key point is that this processing replicates inherent features of the native files. You're not creating electronically searchable documents. The documents are already electronically searchable. You're not creating metadata. Metadata is already embedded within these files. All you are doing is taking this information, extracting it, loading it into a review platform, and that review platform thereby constitutes a reproduction or illustration of the essential features of the electronic. Before this rule changed, who would pay for the cost and the circumstance where it was just paper documents? And you ask for, under the old rule now, and you ask for the same kind of information in litigation, and a paralegal went to the hand files, just the paper files, and pulled out what he or she thought they needed and made a copy of it, then they reviewed it, and then of that they decided they would keep that total copy, that total universe that they picked out, but they only made 10 percentage copies to be passed on into discovery. Would the full universe be paid for under the old rule? Can I answer that question? I want you to answer it. Yes. The answer is possibly, yes, that there are a couple of district courts that have said that preproduction, copying of discovery material that's reviewed can't be necessarily Your answer is in some circumstances it could have been. It could be. Okay. Thank you very much. There's some reserved time on your side. Okay. Thank you very much. Do you have any further questions? Do you have anything else? No. Okay. Mr. Bush. May it please the Court, Judge Sledd, Judge Keenan, Judge Davis, it's my pleasure to present on behalf of the Country Vendors Appellee my colleague, Lisa Sharp, as a counsel table. The questions that have been asked by the panel thus far may cause some slight change in my order of presentation because I want to get to the heart of the issue, Judge Sledd, that you, Judge Davis, and Judge Keenan asked about. By the way, it's Judge Shedd. Shedd. Right. Thank you, Judge Shedd. I'm sorry. Sure. Judge Shedd, you asked the question very appropriately, I believe, about why did this have to be done. Educate me. Why is it so that you say you had to do all this processing? And what I'd like to do is to go back to the record of the case. The record of the case shows that this underlying lawsuit, which Judges Davis and Keenan heard on an earlier appeal, was filed in the state court in North Carolina. At that time, the discovery rules in North Carolina did not require and had not been amended to address all of these issues about electronically stored information. So what? Are you telling us this is not the law we apply in this case? No, sir. It is the law we apply, right? You don't think that this issue is in front of us in this case? No, I'm not arguing to the contrary. So why are you talking about the rules in North Carolina? Aren't we talking about the federal rule to cover copies? One of the arguments, Judge Shedd, that was made by Gallo is that we had to do this because Country Ventnor didn't tell us how they wanted the ESI and didn't define electronically stored information in the document requests that we served on Gallo. That's the only reason why I'm mentioning this. We said after the case was removed and under Rule 26F, the rules of this court, you can't do discovery until you have the discovery conference. And at that very first conference, and as is confirmed in the Rule 26F report in the record, Country Ventnor said, give us the hard copies. We'll take them any way you want to give them to us, including hard copies. By that time, when you look at the record of the case, you're going to find somebody at the Williams Mullen eDiscovery Center had already hit the ESI button. They already started incurring the cost, the very cost of processing that you're asking about, Judge Shedd. But here's the point, though. If you say give us the paper copies, if they'd received every one of those, and made a copy for you, then you'd be paying for them, wouldn't you? Paper copies? Judge. I'm asking you, is that what you're saying? Our position is in this circuit. Listen to my question. If you ask for paper copies, which you said you did, had they supplied you with all this information from the get-go, not that they copied it electronically and then reviewed it and finally did it on a format, but if they supplied all that initial paper to you, copies on paper, then the old rule would cover that, wouldn't it? Judge Shedd. Is that yes or no to that? The answer is no. There is no precedent in the Fourth Circuit that says cost of producing copies in Discovery is taxable as a cost under Section 1920. In fact, in the Daley case in the Fourth Circuit, this Court construed Section 1920 to say we need to keep mind of what 1920 does. It's minor cost. Your position that 1920, before it was amended, did not authorize payment for paper copies supplied in Discovery? If they were used at trial or if they were used in a dispositive motion, our answer would be yes, Judge. There is no precedent in this circuit that says cost of documents produced in Discovery in the Fourth Circuit under this Court's precedent. As this Court ever said, you can't, that they have to be used in Discovery? We found no case saying that it could not be, Your Honor. But going back to your example, because it's a good question you asked, Judge Shedd, and that is, all right, if you ask for it in hard copies, wouldn't you have to pay for it? Well, what they gave us on the disk, which is the closest in this case to the ESI, we paid for it. We agreed to pay for it. It was a TIFF tagged image format. It was placed on a CD. It's the closest thing to a copy. That is what, in fact, we agreed that we needed to pay for. Did you have the metadata embedded then, as Mr. Sevilla was saying, in the items that were transferred to you? Your Honor, without an agreement, without our request, they produced it in a process format. So I believe that metadata would have been a part of that because they had processed it. That was not something that we requested. However, and I think that gets to the whole point that Judge Shedd was asking. Do you assert? Let me say one thing. I'm a little surprised by what you're telling me. See, in South Carolina, I think the local rule is that you recover for cost of copies if they're put into evidence of trial, as I remember. I could be wrong about that, so it's a slightly different take on it. What are you saying your position is, even had the rule, if the rule had not been changed and they had supplied you with paper copies, they could not have recovered for those paper copies unless you used them, you said, in some dispositive motion. Is that your position? And even the old rule wouldn't allow pay for this type of copying, even in the old format of paper. Is that your position? Judge Shedd, I think the answer is necessarily obtained for use in the case. But you haven't answered my question. Your question is not necessarily for this reason. What if a party, in this case Gallo, we know from the record. No, no, no. You're talking all around, and maybe we're talking past one another. Stop for one second and tell me what you think the rule, how the rule is to be applied and must be applied before the change. In other words, making paper copies. You think that rule is those paper copies supplied in discovery are only taxable if those copies themselves were used in some dispositive motion? That is our position, Your Honor. Okay. And, Judge, just to put a point on it and to provide context for that answer, we know in the record of this case 98-plus percentage of what they processed never made it to Country Ventnor over here, and that's what you asked, Judge Keenan. In the old days, what if a party in an antitrust case said, we are going to copy 100 boxes of invoices in support of our antitrust case. And let's say of the 100 boxes of invoices, at the end of the day, it's plain, let's hide the needle in the haystack. That's what I was alluding to. Only 100 pages of the 100 boxes are important enough for somebody on the witness stand for it to be introduced into evidence and for the court to consider it. And, Your Honor, I think that makes the whole point about how Section 1924 in this amendment needs to be construed. We're not flying blind here. We've got a very well-reasoned opinion by race tires. Now, Mr. Bush, let me ask you about text searchability. Race cars doesn't really address that, does it? And should the cost of text searchability be included? Judge Keenan, I may be misreading race tires, but race tires said that very specifically, Judge, that there were five elements to electronic discovery, and three of them, Judge, were of the opinion that they would be not allowed because they were processing. One is to collect and preserve. The other is process and index. And the third is keyboard searching. Now, Judge, I'd like to go to the record of the case. There's an ESI tutorial in Gallo's brief. It goes through tremendous detail about electronically stored information and the process it's used. Despite the characterization that Gallo's counsel has placed in their brief that while processing is copying, that's what they say in their brief, it is country vendors' position that cases are decided based upon the record. And I ask that this court pay particular attention to what the director of the Williams Mullen eDiscovery Center said in his affidavit in support of the bill of cost. And that you will find in the record and the joint appendix beginning at page 1223. Race tires says that we're not going to allow processing if it involves collecting and preserving, which, Judge Shedd, you asked about. Well, in the old days, do you get to recover the cost of your paralegal going out to Hoboken to pick up and look for documents? The answer to that is no. But let's look at Mr. Jones' affidavit. In paragraphs 5 and 6, he says the initial part of the initial processing we obtained from Gallo. That sounds a lot like collecting. Okay, but race tires talks about conversion, doesn't it? I mean, I think the court refers to, it says only at page 167, only the activities undertaken by the vendors, only the conversion of native files to the TIFF format. And that's why I'm asking you about, I'm wondering about the metadata, wondering about the text searchability. What is the court, how broad is the term conversion? Well, Judge, I think that... Does it have to be in a usable format, I guess is what I'm saying. Does it have to be complete and usable? And it seems to me that without the requirement of some sort of text searchability, indexing, just like indexable books. It absolutely does not need to be, Judge Keenan. It absolutely does not need to be. At the end of the day, you read in the briefs, nationwide discovery, et cetera, et cetera, there was a discovery issue. Mr. Seville indicates that, well, we filed a motion for protective order to try to shift these costs, and Judge Britt didn't address that. Well, he didn't address it because they didn't appeal it. But on this particular issue of what race tires says, it says hard drives may need to be imaged. Imaged drives may need to be searched. Relevant files may need to be screened for privilege. That's your question, Judge Davis. File formats may need to be converted. And here's the key language. But that does not mean that the services leading up to the actual production constitute making copies. Judge Keenan, at the end of the day, we got a CD that had information on it. And we said right from the beginning, right from the beginning, that we were prepared to accept hard copies of this information. It was 1%, and we did pay for it or agree to pay for it, but this is not what we're doing. This is what we're doing. I mean, I always try to think about how the opinion is going to be written when I listen to these cases, and race tires didn't really tell us. I mean, it suggests that conversion is just the final act. And that's our position, Judge Keenan. In other words, we didn't – we weren't given – they talk about the fact that our platform is copying. Well, in the RICO case that they cite, well, there was – both parties agreed to what an electronically stored information platform would be. They both participated in it. This was one-sided. I mean, if we were in the courtroom right now, it would tip over with Gallo. It was their system for their convenience at their client's cost with 98% of what they had we didn't get, and we didn't have access to their platform. I think what discovery is all about is trying to have fairness between the parties. In this case, they asked for the cost to be shifted to Country Ventnor. Do you think the district court would have abused its discretion had it taken this under consideration, the same arguments that we're hearing right now, and awarded more costs than it did to cover some of those things which you say you're glad it didn't cover? I mean, could they do that? Or do you think it's an absolute blanket? All the district court under this discretion can give is what amounts to the copies given to the other side. Judge Shedd, that's exactly our position. We believe that we— That wasn't a question. It was a question. It wasn't your position to ask. I'm sorry. Do you think the court has the discretion to do more than just allow discovery costs in this situation, more than for just the actual copying of the disk that goes to you? Well, Judge, I think the framework is Rule 54 says you can tax costs to the prevailing party. Rule section 1920, subsection 4 says that there are very significant limitations on what is a taxable cost. Now, if something is taxable, which necessarily would mean, Judge Shedd, for the district court judge, they would have to say, well, we think everything over here on ESI is processing is taxable. So now we'll use our discretion in terms of deciding— They wouldn't have to say all of it is taxable. No. They could say some part of it is taxable. That's true, but they would have to find— they couldn't do it, Judge Shedd, unless section 1920, that has the language that says copying of materials means processing of electronically stored information. That's the only way you get there. Now, there are other things that they have asked for that we've objected to. I'm just asking, why couldn't part of the process that led up to the actual copies that you got, why couldn't that be processing? Well, I think it was processing, and I don't think it's covered by the statute. Okay, but what about— I don't mean to beat a dead horse here, but getting back to the metadata, that's not always apparent from looking at the electronic copy, right? That's true, Judge Keenan, but— Now, why shouldn't the metadata that's associated with the electronic copy have to be submitted as well? If the party requesting the documents insists upon it, then— So you're saying there has to be a separate request, and then it is taxable at the cost. We said we would take it in any format. The Rule 26-F report that's in the Joint Appendix couldn't have been any clearer. We said, we'll take it any way you want it, including hard copies. And the first notice to Country Vendor in the record of this case that they had gone through all of these steps of this expensive processing that they now want Country Vendor to pay as a taxable cost, on February 9 of 2012, they'd been working on it for four or five months. They didn't come back to us and say, hold on, at the 26-F conference, Country Vendor, you said you'd take hard copies. Does that mean— I understand that your client would have been willing to take hard copies because the nature of the claim here was such that there really wasn't much of a concern for the integrity of the email. That's exactly right, Judge Davis. This was a simple case. This isn't a federal case. Well, it turned out to be a federal case, as you know. But it started out as a state court contract dispute under the Wine Distribution Agreements Act. Our opponents filed a motion to dismiss and attach hundreds of pages of stuff to it. So there'd be cases where you representing your client, you'd insist on metadata. There could be. There could be. And there's no doubt that there are cases in this circuit in which the parties feel that it's absolutely essential. But you think that could only be awarded by agreement? Well— I'm just asking, do you think the rule allows for that? Or do you think you could only be— I think the statute— No, no, just let me finish my question. I'm sorry. Or do you think that that could only be awarded if you asked for it and agreed to pay for it? That's the real question. Judge, I would say this. Well, I would say yes or no. No, I don't agree with that. No, you don't have to agree to it then. In other words, it cannot be awarded unless you agree to it. It calls for metadata. It depends upon how this court— It depends upon how this court spills the rule under Section 1924. Oh, really? Of course we know that. I'm asking your position on it. Our position on it, Judge, is that if we agree, as was— No, no, no. Listen, don't talk around it. I'm trying to make it straightforward. In response to the question in which Judge Davis said, in some cases you would want that metadata, and you went, yes, we would. I'm saying you would pay for it or you would want it. But you would pay for it, not driven by the rule, but by your consent to pay for it. You are correct on that. Big difference between agreeing to it, which was in Ray Rico, which is one of the big cases that is relied upon by Gallo, there was such an agreement. But you're saying that if you ask, you also will have to pay for it, aren't you? No. No? If you ask for metadata, you don't have to pay for it? No, because you've got necessarily obtained for use in the case, number one. Isn't it part of the copy, though? That's what I'm having trouble with. Judge, the answer is, let's go back to the 100 percent of the 230-some gigabyte. At the end of it, we've got 1 percent. We should have to pay for this over here. Right. You should have to pay for this. But if you ask for the metadata, okay, and it doesn't come through on the copies that they transmitted because it's, you know, the e-mail change or whatever other information was not in the actual copies they transmitted, and you request it, you shouldn't have to pay for that? Judge Keenan, two quick points. Number one, if this case had been filed under the federal rules and if our discovery was served under the federal rules before the 26-F conference, if we didn't specify how the ESI was to be produced, then it defaults back to the rule of Federal Rule of Civil Procedure 34. And it says you have to produce it in the form in which it's ordinarily maintained or where it is reasonably formed that preserves that other information. That didn't happen here. Moreover, when we look at the, in my final comments, with regard to the congressional record of this case and what the judicial conference did and all the reports, you won't find the word electronically stored information. We believe there is no question in this case, but that Section 1924, as it was amended, did not intend to transfer the electronically stored information cost onto the losing party as a taxable cost and change the American rule forever. Thank you. Thank you very much. And then, Mr. Bumgarner, when you're ready. I'm going to keep on rolling. I'm going to keep rolling. Thank you, Your Honor. I'd like to try to address some of the points that Mr. Bush raised and some of the questions that the court has asked previously. Judge Keenan, I think to answer your question about conversion, that's one of the issues that's troublesome about the Third Circuit's decision in race tires. It's not clear what includes conversion. And, in fact, subsequent district court cases that I can point you to one, it's the Abbott Point of Care case from the Northern District of Alabama in 2012. That court did award close to $75,000 in ESI-related expenses. Right, but you are asking for things here that are quite clearly not conversion, not in the remotest sense. We are asking for the cost of copying documents from their original location on Gallo's servers to a review platform and, in that manner, preserving the original qualities of those electronically stored documents so that that information can be produced at the end of the day to Are there any limitations on copying? Any limitations, same question I started with. Are there any limitations on the way you read this rule that would limit copying anywhere, anytime, anyhow? No matter how much it was done in preparation for what you then decide to finally copy and present to the other side. Any limitations in your reading? The statute requires the copies to be necessarily obtained for use in the case. So I think that that's the question. And so many of the courts who have dealt with this issue look at it from a standpoint of was this merely for the convenience of the attorneys or was it out of necessity? And, in this case, the district court rejected all of Country Ventner's necessity-related arguments in its opinion below. Country Ventner has done nothing to challenge that part of the decision in its briefing. And the reason that it was necessary for Gallo to do what it did in this case, well, there's several. The first one- How did the court abuse its discretion below? The court did not abuse its discretion below in making that ruling. No, I'm talking about aren't you claiming you want us to reverse the court's ruling below, don't you? We contended that part of the decision, whether- I didn't ask you that. I said don't you want us to reverse the court's ruling below and don't we review that for abuse of discretion? That ruling is reviewed de novo. It's reviewed de novo as to statutory meaning. Yes, Your Honor. All right. Is it your contention that processing ESI is unavoidably and always a part of copying ESI? Is that what your position comes down to? We don't contend that that's always the case, but that certainly- When would it not be the case? If it's not necessary to obtain the documents- So other than a case in which there are only 27 e-mails, under what other circumstances would it not be necessary? And is it always necessary when there's a request for metadata? I can't point you to an example that's not presented in the record here. I'm just trying to figure out is it just a quantitative measure? If there aren't very many e-mails, then processing is not part, but- Well, the question is whether the processing is necessary to obtain documents. And I'm asking you when is it not necessary? I think it would always be necessary, but the degree to which- Okay, I think that's a different answer from the one you gave me 30 seconds ago. Is it necessary or is it convenient? I think that's the standard that's developed out of the case law. Well, it's always convenient, isn't it? Well, nothing was convenient about what happened in this case. Well- Your Honor, we got- Would your answer change if you win this case? If we win this case? Yeah. No, Your Honor. If you get paid? No, Your Honor. We already have been paid by our client. No, no, I know that. I mean, would it be convenient? I mean, I don't know why you used the word convenient. Because the case law does. The case law interpreting the statute does. Was that word used before the statute was amended? I believe so, Your Honor. But you turned over only 1% of what you were looking through. Isn't that correct? And what I'm worried about, too, is the potential for abuse. You could essentially drive your opponent into financial ruin by claiming that you had to search all these things. You have the information in your control as to what the universe of items is. It was a small amount of information that was produced. But in the context of the litigation, the costs we're seeking to recover are very small. This was a brand that represented over 20% of country business business. Well, no, I understand your argument on the Paris case. In the millions. But you haven't answered her question. She didn't ask limited to the facts of the case. She talked about the implications of reading the rule the way you would read the statute, rather. That's her implication. Which I led with, too, which is the potential for abuse and for discovery driving litigation in a way to discourage it. It's not what you did in a particular case, but you have to look at what your reading of the statute opens the door to. Not just what you did in this case. Well, the courts are always going to have to interpret the statute and apply it in the context of case law that's previously interpreted. But in this case, it was necessary for Gallo to do what it did because of the limited searchability of the documents as they existed on the archive and the search terms that the district court below required Gallo to produce under. So if you keep an old system, then you can drive the costs up on your opponent. Well, I don't know if I would go so far as that, Your Honor. That just seems illogical, that you should be able to control that. This was a new system that was implemented in 2008, and the searchability just wasn't there. But you mentioned you missed the point. It doesn't matter what happens in a specific case. You're worried about a specific case for you, and you're trying to fit your specific case under the rule. But we're thinking in the broader picture of what other cases will be fit under the rule the way that you want to read it to cover what you think is reasonable in this case. I'll give you 30 seconds to finish. You're out of time, but I'll give you 30 seconds. Thank you, Your Honor. In conclusion, we have found no directly analogous Fourth Circuit authority in this case, and we believe that Gallo's construction, proposed construction of the cost statute section 19-20 with respect to e-discovery cost is reasonable and appropriate, especially under the facts presented. And for reasons stated today and the stated reasons in Gallo's brief, we request that this court award $101,858 in cost. This court should make that award or remand the case to the district court with instructions to enter that award. Thank you very much. We'll step down and greet counsel, and then we'll go directly to the next case.
judges: Dennis W. Shedd, Andre M. Davis, Barbara Milano Keenan